IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONNIE MOSLEY** | § | **PLAINTIFF** |
| | § | |
| **V.** | § | **1:04CV816LG-RHW** |
| | § | |
| **WAFFLE HOUSE, INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER TAKING UNDER ADVISEMENT
DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF
DR. JOEL L. NITZKIN AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

BEFORE THIS COURT is the Motion of Defendant Waffle House, Inc., to Exclude the Testimony of Dr. Joel L. Nitzkin and for Summary Judgment [18], filed pursuant to FED. R. EVID. 702 and FED. R. CIV. P. 56, in the above-captioned cause on October 17, 2005. The Plaintiff filed a response on March 6, 2006,[1] and Defendant filed a reply on March 9, 2006. For the reasons set forth below, the Court will conduct a *Daubert* hearing during trial and will determine at that time whether Dr. Nitzkin's testimony should be excluded. Because Dr. Nitzkin's testimony may be admitted at trial, the Defendant's motion for summary judgment must be denied.

FACTS AND PROCEDURAL HISTORY

On February 3, 2002, the Plaintiff, Donnie Mosley, along with two friends, ate steak and eggs at the Waffle House located at 1938 Beach Boulevard, Biloxi, Mississippi. Within three hours of eating at the Waffle House, Mosley and one of his friends became ill. The following day, Mosley went to the Biloxi VA hospital and was admitted. He was diagnosed as having appendicitis, and his appendix was removed. One week later, his blood culture

---

[1]Due to problems arising from Hurricane Katrina, the Plaintiff requested and the Court granted the Plaintiff additional time to respond to the summary judgment motion.

revealed that he had salmonella. In the weeks prior to February 3, 2002, the only food consumed by Mosley was from Waffle House.

On July 28, 2004, Mosley filed a complaint against Waffle House in the Circuit Court of Harrison County, Mississippi. In his complaint, Mosley alleged that Waffle House was negligent for a number of reasons, including failing to properly train employees, failing to keep its premises safe, failing to warn customers of dangerous conditions, and failing to prepare food in the correct manner. Waffle House removed the case to this Court on November 3, 2004. On October 17, 2005, Waffle House filed its motion to exclude the testimony of Dr. Nitzkin and for summary judgment. According to Waffle House, Dr. Nitzkin's opinion is neither relevant nor reliable, and therefore should be excluded. In addition, Waffle House contends that without Dr. Nitzkin's opinion, Mosley cannot prove causation. For this reason, Waffle House contends that it is entitled to summary judgment.

## DISCUSSION

FED. R. CIV. P. 56 permits any party to a civil action to move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. In effect, Rule 56(c) provides that as a matter of law, upon admitted or established facts, the moving party is entitled to prevail. Summary judgment "is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists." *Whitaker v. Coleman,* 115

F.2d 305, 307 (5th Cir. 1940).  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Catrett*, 477 U.S. at 324-25, 106 S.Ct. at 253-54.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

S<small>HOULD</small> D<small>R</small>. N<small>ITZKIN'S</small> O<small>PINION BE</small> E<small>XCLUDED</small>?

In its motion to exclude the testimony of Plaintiff's expert, Dr. Nitzkin, Waffle House argues that his testimony should be excluded because it is neither relevant nor reliable.  According to Waffle House, Dr. Nitzkin's testimony is irrelevant because it is speculative and "does not assist the trier of fact in understanding what caused Mosley's *Salmonella*."  (Def.'s Mot. to Exclude Expert Testimony, p. 3, filed Oct. 17, 2005.)  Waffle House contends that Dr. Nitzkin's opinion that Mosley's salmonella was most likely caused by Waffle House food is not based upon scientific evidence.  Waffle House further contends that Dr. Nitzkin's opinion is flawed because he relies upon a "string of presumptions," including "Mosley's assertion that he had eaten only Waffle House food prior to his illness."  (Def.'s Mot. to Exclude Expert Testimony, p. 4.)  In addition, Waffle House claims that Dr. Nitzkin's opinion is unreliable because it is not based upon sufficient facts or data, and because it does not meet the *Daubert* factors for reliability.

3

Mosley contends that Dr. Nitzkin's opinion is relevant and reliable and thus admissible. According to Mosley, contrary to Waffle House's contention, Dr. Nitzkin did not rely upon a string of presumptions, but rather upon the following facts:

> Donnie Mosley ate all of his meals during this time frame at Waffle House; Waffle House had a persistent pattern of serious violations of a nature that dramatically increase the risk of salmonella food poisoning; Mosley's blood culture tested positive for Salmonella after being admitted to the hospital a day after eating at Waffle House; Mosely (sic) reported eating at no other place than Waffle House in the critical days prior to admission to the hospital (Dep. of Mosley at 54); Mosley's preference at Waffle House was for slightly-cooked (runny yolks) eggs (Dep. of Mosely (sic) at 30-31); Mosely (sic) lived in a motel room with no refrigerator or cooking facilities and thus ate all of his meals from his girlfriend's place of employment, Waffle House (dep. of Mosely (sic) at 59).

(Pl.'s Br. in Resp., p. 3, filed Mar. 6, 2006.)  Mosley also contends that the Daubert factors are not pertinent in this case because Dr. Nitzkin's opinion is largely based upon "professional education, training and experience in the field of preventive medicine and epidemiology." (Pl.'s Br. in Resp., pp. 4-5.)  Mosley cites *Pipitone v. Biomatrix*, 288 F.3d 239 (5th Cir. 2002) in support of his contention.

FED. R. EVID. 702 provides as follows concerning the admissibility of testimony of an expert witness:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  "Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant."  *Curtis v. M & S Petroleum, Inc.*, 174 F.3d

661, 668 (5th Cir. 1999).  The Fifth Circuit has described this Court's gatekeeping function

under FED. R. EVID. 702 and *Daubert* as follows:

> . . . [T]he court must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case.  The Supreme Court listed several non-exclusive factors to guide courts in their screening function: whether the proposed evidence or theory "can be (and has been) tested"; whether it "has been subjected to peer review and publication"; whether it has been evaluated in the light of "potential rate[s] of error"; and whether the theory has been accepted in the "relevant scientific community".  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
>
> The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended.  *See* Fed. R. Evid. 702 advisory committee's note (2000 Amendment).  The 2000 amendments to Rule 702 also reflect the Supreme Court's determination that the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does *not* judge the expert conclusions themselves.  *Daubert*, 509 U.S. at 594-95, 113 S.Ct. 2786.

*Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).  The Court may also consider

other factors, if relevant, such as "[w]hether the expert has unjustifiably extrapolated from an

accepted premise to an unfounded conclusion," and "[w]hether the expert has adequately

accounted for obvious alternative explanations."  FED. R. EVID. 702 advisory committee's

notes (2000 Amendment).  "The district court's responsibility 'is to make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field.'"  *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th

Cir. 1999), *quoting Kumho Tire Co., Ltd. v. Carmichael*, 526

U.S. 137, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999).

Dr. Nitzkin opines that Mosley's salmonella was most likely caused by the food Mosley ate at Waffle House. Dr. Nitzkin's opinion is based upon the following:

> . . . the clinical and laboratory findings, health inspection reports over a five year period, including both before and after his 2002 illness and his history of having eaten multiple meals at the waffle house (sic) which included high risk foods including eggs, salad and chicken.

(Dr. Nitzkin's op. letter, dated June 1, 2005, Ex. E., Def.'s Mot., filed Oct. 17, 2005.) Dr. Nitzkin noted that "the health inspection reports show a consistent pattern of temperature violations and poor sanitation–the combination of which creates ideal conditions for cross-contamination of foods in the restaurant (most likely from raw eggs or chicken) and ample opportunity for the salmonella bacteria to multiply in the foods enough to cause illness." (Dr. Nitzkin's op. letter.) Dr. Nitzkin did not agree with Mosley that he contracted the illness on February 3, 2002, because there is a 6 to 72 hour incubation period "from exposure to onset of illness." (Dr. Nitzkin's op. letter.) He therefore concluded that Mosley contracted salmonella from one of the other meals he ate at Waffle House within the 72 hours prior to the onset of illness. Dr. Nitzkin also noted that Mosley's "72-hour food history shows no other likely exposure to salmonella during that period." (Dr. Nitzkin's letter.)

Dr. Nitzkin's opinion is in the form of a one page letter. Dr. Nitzkin does not discuss whether he considered and rejected alternative sources of salmonella. In addition, he does not explain why there were no other reports of salmonella during this time. Moreover, Dr. Nitzkin's letter does not provide any specific information concerning his professional experience in identifying sources of salmonella. For these reasons, the Court will conduct a *Daubert* hearing during trial to determine the reliability of Dr. Nitzkin's testimony. The Court

will therefore take Defendant's motion to exclude Dr. Nitzkin's testimony under advisement until trial.  In addition, because Dr. Nitzkin's testimony may be admitted at trial, a genuine issue of material fact exists regarding causation.  For this reason, Defendant's motion for summary judgment must be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that for the reasons stated above, the Motion of Defendant Waffle House, Inc., to Exclude the Testimony of Dr. Joel L. Nitzkin [18] should be and is hereby **TAKEN UNDER ADVISEMENT.**

**IT IS FURTHER ORDERED AND ADJUDGED,** that for the reasons stated above, Motion of Defendant Waffle House, Inc., for Summary Judgment [18], should be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED** this the 14th day of April, 2006.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE